# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

GBR GROUP LTD, nka, GBR Group
LLLP,

      Appellant,

v.                                                                    Case No. 3:23-cv-34-MMH

WATER MARBLE HOLDINGS,
LLC,

      Appellee.

_____

# <u>O R D E R</u>

**THIS CAUSE** is before the Court on Appellee's Motion to Dismiss Appeal (Doc. 20; Motion) filed by Water Marble Holding, LLC ("Water Marble") on May 30, 2023.[1] Appellant GBR Group, LTD ("GBR") timely filed a response on June 13, 2023. <u>See</u> Appellant's Response in Opposition to Motion to Dismiss Appeal as Moot (Doc. 26; Response). Water Marble then filed a reply. <u>See</u> Appellee's Reply in Support of its Motion to Dismiss Appeal for Equitable Mootness (Doc. 29; Reply), filed June 28, 2023. Accordingly, this matter is ripe for review.

---

[1] Citations to "Doc." refer to the docket entries in this case, whereas citations to "Adv. Doc." refer to the docket entries in the adversary bankruptcy proceeding styled <u>GBR Group, LLLP v. Water Marble Holding, LLC</u>, No. 3:23-ap-0018-JAB (Bankr. M.D. Fla. 2023).

## I.    Background

Water Marble owns real property (the "Hotel Property") in Jacksonville, Florida on which a hotel operating under the name Marble Waters Hotel and Suites (the "Hotel") is located. See Affidavit of Livia Basso at 3 (Doc. 13-46; Basso Affidavit). Pursuant to an agreement with Water Marble, Marble Waters Hotel & Suites, Inc. (the "Affiliate"), leases and manages the Hotel.[2] Id. Between 2011 and 2015, Water Marble executed a series of mortgages and promissory notes in favor of GBR totaling $15.2 million. Id. at 3–4; Response at 2. In return, GBR received a first-priority security interest in the Hotel Property. Basso Affidavit at 4. Water Marble eventually became delinquent on several of its mortgage payments, and GBR initiated a foreclosure proceeding in state court. Id. at 6. Before a judgment could be entered in the foreclosure proceeding, on April 28, 2021, Water Marble filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. See Voluntary Petition for Non-Individuals Filing for Bankruptcy at 1 (Doc. 13-6).

During the bankruptcy proceeding, in June of 2022, the Bankruptcy Court determined that GBR had a secured claim on the Hotel Property in the amount of $5.6 million and an unsecured claim of $12,907,660. See Order

---

[2] Both Water Marble and the Affiliate are wholly owned subsidiaries of Titus Harvest Dome Spectrum Church, Inc. (the "Church"). Motion at 3.

Determining Secured Status (Doc. 13-167). Later, after significant litigation before the Bankruptcy Court, Water Marble presented a proposed Amended Plan of Reorganization to the Bankruptcy Court for its consideration. See Amended Plan of Reorganization (Doc. 13-259; Proposed Plan). In the Proposed Plan, Water Marble outlined how it intended to continue to operate while simultaneously repaying its creditors. Id. After holding a hearing, the Bankruptcy Court approved, with some modifications, the Proposed Plan in a written order. See Order Confirming Debtor's Amended Plan of Reorganization (Doc. 13-3; Confirmation Order).[3] Under the Plan, GBR retains its secured claim on the Hotel in the amount $5.6 million and its unsecured claim of $12,907,660. Proposed Plan at 3–4. To repay these claims, the Plan requires Water Marble to use the funds it receives from leasing the Hotel to make 180 monthly payments in the amount of $56,798.93 to GBR. Id. at 3.[4] The Plan also requires Water Marble to make payments owed to the Small Business Administration and the Duval County Tax Collector. Id. at 3–5.

---

[3] The Court refers to the Proposed Plan as modified and approved by the Confirmation Order as "the Plan," but cites to the terms as set forth in either the Proposed Plan or the Conformation Order, as appropriate.

[4] The Proposed Plan provided for the monthly payments of $51,913. However, the Bankruptcy Court modified Water Marble's monthly payments to GBR to include interest, bringing the total monthly payments to $56,798.93. See Confirmation Order Hearing Transcript (Doc. 314 at 172); Confirmation Order at 2.

On December 27, 2022, GBR filed a Notice of Appeal challenging the Confirmation Order approving the Plan. See Bankruptcy Notice of Appeal (Doc. 1). Shortly afterwards, GBR initiated an adversary proceeding against Water Marble in the Bankruptcy Court. See Complaint for Revocation of Confirmation Order Obtained by Fraud (Adv. Doc. 1). In this adversary proceeding, GBR sought to have the Bankruptcy Court revoke the Plan arguing that in approving the Plan the Bankruptcy Court relied on fraudulent statements made by Water Marble. See generally id. GBR also filed a Motion for Indicative Ruling asking the Bankruptcy Court to enter an indicative ruling stating that it "would grant GBR a summary judgment revoking the Confirmation Order[.]" See Motion for Indicative Ruling at 1 (Adv. Doc. 3). GBR then moved this Court to stay this appeal until the Bankruptcy Court resolved the Motion for Indicative Ruling. See Motion to Stay Appeal (Doc. 9). A few weeks later, GBR filed an Amended Complaint (Adv. Doc. 13), and an Amended Motion for Indicative Ruling with the Bankruptcy Court (Adv. Doc. 14), prompting the Court to deny GBR's Motion to Stay as moot. Endorsed Order (Doc. 12). In doing so, the Court instructed GBR to file a renewed motion. Id. GBR did not do so. Instead, on April 5, 2023, GBR voluntarily dismissed the adversary proceeding. See Notice of Voluntary Dismissal (Adv. Doc. 19).

On January 10, 2023, Water Marble filed a Certificate of Substantial Consummation in the Bankruptcy Court case in which its manager, Faye

Refour, certified that Water Marble had complied with the provisions of the Plan. See Certificate of Substantial Consummation at 1 (Doc. 10-6; Certificate). In the Certificate, Refour attested that the Plan had "been substantially consummated within the meaning of 11 U.S.C. §1101(2), by the Debtor making the initial payments to its creditors as per the Plan[.]" Id. More recently, in support of the Motion, Refour attests that as of May 25, 2023, Water Marble had made payments to Blue Water Hospitality and the Duval County Tax Collector totaling $171,368.01; payments to the Small Business Administration in the amount of $80,000, with additional monthly payments of $618.39 continuing to be made; and (3) payments to GBR totaling $156,556.78, with ongoing additional monthly payments of $56,798.93. Motion at 12; Declaration of Faye Refour (Doc. 20-2; Refour Declaration at 2). In addition to making these distributions, Water Marble has entered into a franchising agreement with TMH Worldwide, LLC or its affiliates ("Wyndham"). Refour Declaration at 2. As a condition to approving the franchising agreement, Wyndham required Water Marble to incur $6,000 in expenses to make improvements to the Hotel and to upgrade the Hotel Wi-Fi which Water Marble did at a cost of $5,699.25. Id. In return, Wyndham has provided the Hotel with training for their staff and weekly sales support, and has included the Hotel on their online reservation system. Id. Additionally, Refour states that the Church has made payments of

approximately $600,000 to support Water Marble's obligations under the Plan. Id.

In the Motion, Water Marble argues that the Court should dismiss GBR's appeal because it is equitably moot. Motion at 9. In response, GBR contends that Water Marble's Motion is meritless and should be denied. Response at 1. For the reasons discussed below, the Court finds that GBR's appeal is equitably moot, as such, Water Marble's Motion is due to be granted.[5]

## II.   Governing Law

This Court has jurisdiction to hear an appeal from a final judgment entered by the Bankruptcy Court. See 28 U.S.C. § 158(a). In functioning as an appellate court, the Court reviews de novo the legal conclusions of a bankruptcy court but accepts a bankruptcy court's factual findings unless they are clearly erroneous. See In re JLJ Inc., 988 F.2d 1112, 1116 (11th Cir. 1993). However, even though the Court has jurisdiction to hear this appeal from a final judgment entered by the Bankruptcy Court, the doctrine of equitable mootness allows the Court to decline to review that final judgment. See In re Hazan, 10 F.4th 1244, 1252 (11th Cir. 2021). As the Eleventh Circuit has explained, the doctrine of equitable mootness vests the Court with the ability, "under certain

---

[5] GBR argues that Water Marble's Motion is untimely. Response at 13. GBR has failed to provide the Court with any legal authority in support of this assertion, and the Court does not find that Water Marble's Motion was in fact untimely. Therefore, this argument is unavailing.

circumstances, [to] reject bankruptcy appeals if rulings have gone into effect and would be extremely burdensome, especially to non-parties, to undo." Bennett v. Jefferson Cnty., Alabama, 899 F.3d 1240, 1247 (11th Cir. 2018). "Although the word 'mootness' is used to describe the doctrine, in fact it 'does not reference actual mootness at all.'" In re Hazan, 10 F.4th at 1252 (quoting Bennett, 899 F.3d at 1247). Instead, "the doctrine turns on equitable and prudential concerns which focus on whether it is reasonable to entertain the contentions of the parties challenging an order of the bankruptcy court." Id. (quotation omitted). In Bennett, the Eleventh Circuit noted that the "facts will weigh in favor of finding equitable mootness when allowing an appeal to go forward will impinge upon actions taken to one's detriment in 'good faith reliance on a [final and unstayed] judgment'" of the Bankruptcy Court. Bennett, 899 F.3d at 1248 (quoting In re Club Assocs., 956 F.2d 1065, 1069 (11th Cir. 1992) (alterations in original))). On the other hand, equitable mootness generally will not apply when "the relief sought does not undermine actions that may have been taken in reliance on the judgment, or if no such actions have been taken[.]" Id.

In determining whether to dismiss an appeal on the grounds of equitable mootness, the Eleventh Circuit has instructed that, among other circumstances, a court should consider:

> [1] [W]hether the appellant has obtained a stay pending appeal, [2] whether the plan has been substantially consummated, and [3] whether third parties' rights or the debtor's ability to successfully reorganize would be adversely affected by granting the relief sought by the appellant.

In re Hazan, 10 F.4th at 1252 (citing In re Club Assocs., 956 F.2d at 1069 n.11). "No single factor is determinative, and [a] court must consider 'all the circumstances of the case to decide whether it can grant effective relief.'" In re Nica Holdings, Inc., 810 F.3d 781, 786 (11th Cir. 2015) (quoting In re Club Assocs., 956 F.2d at 1069)). That being said, "[w]hen a reorganization has been substantially consummated . . . there is a strong presumption that an appeal of an unstayed order is moot." In re Hazan, 10 F.4th at 1253 (quotations omitted).

## III.   Discussion.

### A.   Stay Pending Appeal

Applying the principal equitable mootness factors identified in In re Hazan, Water Marble first argues that because GBR failed to obtain a stay of the Bankruptcy Court's Confirmation Order this factor weighs in favor of finding the appeal to be equitably moot. Motion at 9–10. The Eleventh Circuit has noted that a party's failure to obtain a stay is a critical consideration "because it is an 'important policy of bankruptcy law that court-approved reorganization plans be able to go forward based on court approval unless a stay is obtained.'" In re Hazan, 10 F.4th at 1252 (quoting Miami Ctr. Ltd. P'ship v. Bank of New York, 838 F.2d 1547, 1555 (11th Cir. 1988)). This makes sense as

"it is often difficult for courts to afford relief to the appealing party because the court is unable to rescind transactions taken in consummation of the reorganization plan and confirmation order enforcing said plan." In re Winn-Dixie Store, Inc., 286 F. App'x 619, 623 (11th Cir. 2008) (per curiam)).[6] Nevertheless, the "[f]ailure to obtain a stay of proceedings related to the bankruptcy does not automatically render an appeal moot." In re Seidler, 44 F.3d 945, 948 (11th Cir. 1995). Instead, in cases where a stay has not been obtained the Court must ask whether a stay was "unjustifiably denied or was justifiably not requested[.]" Bennett, 899 F.3d at 1249.

Here, GBR contends that it chose not to seek a stay because a stay "potentially could have cut off the $56,798 monthly payments to GBR required under the [P]lan." Response at 16. GBR also explains that because it could have sought adequate protection payments during the stay, nothing would have changed if it had sought and obtained a stay. Id. Additionally, GBR states that in seeking a stay it "could hardly claim prejudice from the payment of some property taxes and a return of fraudulently procured SBA loan proceeds." Id. According to GBR, these circumstances combined with the fact that in its view the "Wyndham relationship" was "extremely tenuous" caused it to conclude that

---

[6] The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

"the cost-benefit of seeking a stay of the Confirmation Order simply was not there." Id. at 16–17.

The Court does not find this to be a justifiable reason to fail to seek a stay. Although it may have been simpler for GBR to continue receiving monthly payments under the Plan while this appeal was pending, it certainly disadvantaged Water Marble to have to expend resources attempting to comply with the requirements of the Plan. Moreover, because GBR did not obtain a stay, Water Marble began making payments to its creditors and entered into the franchising agreement with Wyndham in an attempt to make the Hotel more profitable. Under these circumstances, the Court finds that GBR lacked a justifiable basis to not seek a stay, and that this failure induced Water Marble to act in reliance on the Plan having been approved. See Bennett, 899 F.3d at 1248 (applying equitable mootness when "allowing an appeal to go forward will impinge upon actions taken to one's detriment in good faith reliance on a final and unstayed judgment") (quotation omitted). The Court notes that GBR also contends that the "bankruptcy court had already signaled it was disinclined to stay the Confirmation Order." Response at 17. But this ignores that GBR had the ability to seek a stay from this Court regardless of the inclination of the Bankruptcy Court. GBR's internal assessment that it "could not justify the costs of seeking" a stay does not constitute a justifiable reason to fail to present the

matter to this Court for its consideration. Id. This factor therefore weighs in favor of a finding of equitable mootness.

## B.    Substantial Consummation

Next, Water Marble argues that the Plan has been substantially consummated. Motion at 10. Notably, the Eleventh Circuit has held that "[w]hen a reorganization has been substantially consummated . . . there is a strong presumption that an appeal of an unstayed order is moot." In re Hazan, 10 F.4th at 1253 (quotations omitted). Under 11 U.S.C. § 1101(2), "substantial consummation" means there has been:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2); see also In re Hazan, 10 F.4th at 1253. Surprisingly, given the importance of a finding of substantial consummation, while GBR acknowledges the requirements for such a finding, it dedicates less than a page and a half of the Response to the discussion of whether these requirements have been satisfied. The Court will analyze each of the requirements in turn.

### 1.    Transfer of Property

Without citing any legal authority GBR contends that substantial consummation has not been achieved because the Plan did not provide for the

transfer of property. Response at 19. The Court finds this contention to be unavailing. To start, 11 U.S.C. § 1141(b) states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Id. Here, the Plan and the Confirmation Order are silent as to the transfer of property. As such, upon approval of the Plan the Hotel Property automatically re-vested to Water Marble. See U.S.C. § 1141(b). This re-vestment of property constituted a transfer under 11 U.S.C. § 1101(2)(A). In reaching this conclusion, the Court relies upon the Eleventh Circuit's opinion in In re Hazan. There, the appellant argued that substantial consummation had not occurred because property had not been transferred. Id. at 1253. The Eleventh Circuit rejected this argument, noting that the district court had found that "the Plan called for all pre-petition property of the estate to re-vest in the Reorganized Debtor and that has happened." Id. (quotation omitted). Consequently, the Eleventh Circuit found that this re-vestment of property in the debtor qualified as a transfer for the purposes of 11 U.S.C. § 1101(2)(A). Id. In re Hazan is, of course, different from this case in that the plan specifically called for the re-vestment of property. However, pursuant to 11 U.S.C. § 1141(b) upon confirmation of the Plan the Hotel Property re-vested to Water Marble by operation of law. Consistent with In re Hazan, that re-vestment of the Hotel Property to Water Marble

constituted a transfer for purposes of 11 U.S.C. § 1101(2)(A). Thus, the Court finds that this requirement has been satisfied.

### 2. Assumption of the Business and Management of the Property

Next, Water Marble argues that substantial consummation has occurred because it has retained the Hotel Property and the Affiliate has assumed its management. Reply at 4. To satisfy 11 U.S.C. § 1101(2)(B), all that is required is an "assumption by the debtor or by the successor of the debtor under the plan of the business or of the management of all or substantially all of the property. . . ." Id. Here, Water Marble has retained the Hotel Property and the business operations of the Hotel. Proposed Plan at 1. This alone is enough to satisfy 11 U.S.C. § 1101(2)(B). Despite this, GBR contends that because the Hotel is not under professional management, the requirement of 11 U.S.C. § 1101(2)(B) has not been met. Response at 19–20. The Court is not persuaded by this contention. The Plan provided that the "Hotel will be managed by Blue Water Hospitality." Proposed Plan at 6. The Bankruptcy Court approved Blue Water Hospitality to manage the Hotel, but it appears Water Marble terminated the services of Blue Water Hospitality after a brief period of time. See Order Approving Application to Employ Management Company (Doc. 13-309); Amended Complaint at Ex. 1. In Blue Water

Hospitality's place, the Affiliate has since taken over management of the Hotel. Amended Complaint at Ex. 1.

GBR contends that because the Affiliate is managing the Hotel, and not Blue Water Hospitality, 11 U.S.C. § 1101(2)(B) cannot be satisfied. The Court finds that the plain language of 11 U.S.C. § 1101(2)(B) does not require property to be managed by a professional management group—and GBR has provided no legal authority for such a proposition. Notably, the Eleventh Circuit has found that 11 U.S.C. § 1101(2)(B) is satisfied when "the [debtor] has[s] assumed the management of all of the property." In re Hazan, 10 F.4th at 1253. This appears to be what happened here. For these reasons, the Court finds that because Water Marble retained the Hotel Property and the Affiliate has assumed management of the Hotel on Water Marble's behalf, 11 U.S.C. § 1101(2)(B) has been satisfied.

### 3.   Commencement of Distributions

As to the third requirement, GBR contends that the "few payments out of the 180 [Water Marble] owes GBR does not qualify as a commencement of distribution." Response at 19 (citation omitted). In support of this contention, GBR relies on In re Nica Holdings, Inc., 810 F.3d 781 (11th Cir. 2015). There, the Eleventh Circuit found that distributions had not commenced because no creditor had received any distribution and only "a relatively small sum of $260,000 ha[d] been paid by two interested—possibly blameworthy—parties

into the estate, where the money remains." Id. at 788. The circumstances are materially different in this case. Here, Water Marble has paid $171,368.01 to Blue Water Hospitality and the Duval County Tax Collector, $80,000 to the Small Business Administration, $156,556.78 to GBR with continuing monthly payments of $56,798.93, and the Church has made payments of over $600,000 on Water Marble's behalf. Motion at 12, 14. Water Marble has certified that these distributions, which were required by the Plan and approved by the Bankruptcy Court, have been made. Certificate at 1. And GBR does not dispute these facts. In light of these payments, the Court finds In re Nica Holdings to be wholly distinguishable from this case. While no creditors had received any distributions in In re Nica Holdings, here Water Marble has made payments to three different creditors. See In re Hazan, 10 F.4th at 1253 n.7 ("'[s]ubstantial consummation' just requires 'commencement of distribution[.]'"). For this reason, the Court finds that Water Marble has commenced distributions under the Plan for the purposes of 11 U.S.C. § 1101(2)(C).

In sum, the Court finds that Water Marble has substantially consummated the Plan because: (1) the Hotel Property re-vested to Water Marble; (2) Water Marble retained the Hotel Property; and (3) Water Marble commenced distributions owed to GBR, the Duval Tax Collector, and the Small Business Administration. The Court therefore finds that the requirements of 11 U.S.C. § 1101(2) have been satisfied. As previously noted, the Eleventh Circuit

has recognized the existence of a strong presumption that the appeal of an unstayed order confirming a reorganization plan is moot when the plan has been substantially consummated. See id. at 1253. The Court has already found that GBR lacked a justifiable reason for its decision not to seek a stay, and because Water Marble has substantially consummated the Plan, the Court finds that this "strong presumption" of equitable mootness applies here. Id. Nonetheless, the Court will analyze the final equitable mootness factor.

**C.    Water Marble's Ability to Reorganize and Third-Party Rights**

Water Marble argues that if the Bankruptcy Court's Confirmation Order is reversed not only will its ability to reorganize be adversely affected, but parties such as Wyndham and the Church will be harmed. Motion at 11–12. In analyzing this factor, the Court must look at whether the "relief granted . . . could implicate or have an adverse effect on non-party creditors and will affect the re-emergence of the debtor as a revitalized entity." Bank of New York, 838 F.2d at 1555 (citation omitted).

First, Water Marble explains that the Hotel Property is its only meaningful asset, and that reversal of the Confirmation Order will impact its ability to pay back its creditors. Motion at 11. The purpose of the Plan was to allow Water Marble to maintain the Hotel Property and to use the income from leasing the Hotel to make distributions. Since the Hotel Property is Water

Marble's only meaningful asset, reversal of the Bankruptcy Court's Confirmation Order would impact Water Marble's ability to continue making payments to GBR and the Small Business Administration. Despite this, GBR contends that if the Confirmation Order is reversed Water Marble will still have its full rights of redemption under Florida law and will be able to prevent the Hotel Property from being sold. Response at 21. Not only is this argument speculative, but as the Eleventh Circuit has noted, "[t]here is no merit to the claim that granting [the creditor] relief would not affect creditors, because [the debtor's] retention of equity in the Property was integral to executing the Plan." In re Hazan, 10 F.4th at 1254. Similarly, Water Marble's retention of the Hotel Property is essential to the effectuation of the Plan as it is the very asset that will allow Water Marble to pay off its creditors. Reversing the Bankruptcy Court's Confirmation Order would therefore impact Water Marble's ability to effectively reorganize.

Second, Water Marble argues that Wyndham and the Church have relied on the Plan being implemented by investing in the Hotel, and that they may be harmed if the Confirmation Order is reversed. Motion at 13. In this regard, the Court notes that Water Marble has entered into a franchising agreement with Wyndham and made improvements to the Hotel to ensure approval of the franchising agreement. In return, Wyndham has provided the Hotel with staff training, weekly revenue management training and weekly sales support

meetings, and has placed the Hotel on their online reservation system to help with their marketing. Id. at 13–14. Additionally, the Church has paid over $600,000 on Water Marble's behalf to ensure its compliance with the Plan. Id. at 14. Overturning the Bankruptcy Court's Confirmation Order may result in both Wyndham and the Church not seeing a return on these investments. See In re Club Assocs., 956 F.2d at 1070 (finding support for equitable mootness where third-parties had made investments that could not "be protected in the event of a reversal of the Confirmation Order"). Consequently, the Court finds that reversing the Bankruptcy Court's Confirmation Order will negatively impact Wyndham and the Church.

In sum, reversal of the Confirmation Order will negatively impact Water Marble's ability to reorganize, and Wyndham and the Church may fail to see a return on their investments. For these reasons, the Court finds that this factor also weighs in favor of applying the doctrine of equitable mootness.

## IV.   Conclusion

Upon consideration of the record and the arguments of the parties, the Court finds that GBR unjustifiably declined to seek a stay of the Bankruptcy Court's Confirmation Order. Water Marble relied upon the absence of a stay and substantially consummated the Plan. Additionally, reversal of the Bankruptcy Court's Confirmation Order would adversely affect Water Marble's ability to reorganize and could impair the rights of Wyndham and the Church.

Considering these factors, and the circumstances of the case, the Court finds that GBR's appeal of the Bankruptcy Court's Confirmation Order is equitably moot. See Bennett, 899 F.3d at 1248 ("The facts will weigh in favor of finding equitable mootness when allowing an appeal to go forward will impinge upon actions taken to one's detriment in good faith reliance on a final and unstayed judgment.") (quotation omitted). As GBR's appeal is equitably moot, the Court will grant the Motion and does not reach the merits of this appeal.

Accordingly, it is

**ORDERED:**

1.    Appellee Water Marble Holding, LLC's Motion to Dismiss Appeal (Doc. 20) is **GRANTED**.

2.    This appeal is **DISMISSED**.

3.    The Clerk of Court is directed to enter judgment, **CLOSE** the case, and terminate any pending motions.

**DONE AND ORDERED** in Jacksonville, Florida this 15th day of November, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

Lc32
Copies to:

The Honorable Jacob A. Brown, United States Bankruptcy Judge
Counsel of Record